RECEIVED

JAN 2 1 2016

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| AUTHOR BLAND | CIVIL ACTION NO. 14-0127 |
| VERSUS | JUDGE DOHERTY |
| OMEGA PROTEIN INC, ET AL. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

Pending before the Court is the "Motion for Partial Summary Judgment on Omega's Arbitrary and Capricious Refusal to Pay Maintenance and Cure" [Doc. 88] filed by plaintiff Author Bland. In the motion, plaintiff moves for summary judgment in its favor on the issue of whether defendant Omega Protein, Inc. ("Omega") "arbitrarily and capriciously refused to provide maintenance and cure" and also seeks "reimbursement of the maintenance and cure benefits to which he is entitled, with payment from the date last paid through the date the plaintiff reaches maximum medical cure following treatment he is entitled to receive, to the extent appropriate under the law." The plaintiff states he will defer his request for the Court to award all punitive damages and attorneys' fees to which he is entitled until the time of trial.

The plaintiff also moves to file the motion for partial summary judgment under seal, on grounds there are portions of the motion and attachments thereto which reference people, documents, and things which are protected from disclosure by two Consent Protective Orders issued by the magistrate judge [Docs. 39 & 44]. The Motion to File Under Seal is GRANTED, the request appearing to be well grounded in law and fact and there being no opposition from the defendant.

For the following reasons, the motion for partial summary judgment is DENIED on grounds

there are disputed material facts as to whether Omega arbitrarily and capriciously refused to pay maintenance and cure benefits beyond the date the plaintiff was determined by Dr. Noel to have reached maximum medical improvement.

I.   **Factual and Procedural Background**

The instant lawsuit arises from an incident which occurred on or about May 3, 2013 aboard the F/V RACOON POINT, a fishing vessel owned and operated by Omega. Plaintiff Author Bland was employed by Omega as a member of the crew of the F/V RACOON POINT. Mr. Bland alleges that while engaged in fishing operations on the vessel, he was struck in the face with a metal ring and injured. Mr. Bland alleges (and Omega does not dispute) he was a Jones Act seaman at the time of the incident. Mr. Bland and his wife, Gloria Bland, individually, and on behalf of their minor child, Y.B., filed the present lawsuit against Omega Protein. Mrs. Blanda has since been dismissed as a plaintiff in this case [Doc. 53].

The following facts are undisputed and relevant to the instant motion:

- On May 3, 2013, Author Bland was struck in the head by a "ring" on one of the F.V. RACOON POINT's fishing nets while performing his duties as a "bunt pile man" on one of the F.V. RACOON POINT's purse boats.

- There was a dent in Mr. Bland's head in the area of his temple as a result of the impact from the ring according to the testimony of Mr. Bland's fellow crew members.

- Mr. Bland was diagnosed with three skull fractures as a result of the impact from the ring, including left zygomaticomaxillary buttress fracture and the depressed left zygomatic arch fracture.

- Dr. Phillip Noel of Lafayette, Louisiana, performed reconstructive surgery to repair the fractures on May 17, 2013. Recovery time from the outpatient surgery was estimated to be approximately one week.

- Bland was seen by Dr. Noel again on May 23, 2013 for a post-surgical follow-up visit. At that time there was no indication of any complications or infection. Bland

was reporting some numbness in the area of his face and occasional pain, with intermittent blurry vision in the left eye, and some headaches.

- On May 24, 2013, Bland was examined by ophthalmologist Zvi Aviner. The conclusion of the ophthalmologic examination was that Bland's eyes were not injured in the accident.

- Bland returned to Dr. Noel on May 30, 2013, at which time he was fully released to return to work without any restrictions and without any functional disability. Dr. Noel found that Bland had reached maximum medical improvement. He testified in his deposition that Bland had no limitation in returning to fishing or other heavy labor. Since May 30, 2013, the plaintiff has not received any medical treatment for injuries related to the subject accident.

- Bland moved to North Carolina, where he was evaluated by Dr. Hoke Pollock, an ENT, for complaints of nasal passageway congestion, pain and numbness. Dr. Pollock opined that the pain and numbness complained of by Bland was not unexpected at that post-surgical stage, and that the fracture repair was satisfactory. Dr. Pollock merely examined Bland but did not provide any treatment.

- On July 22, 2013, Bland was evaluated by Dr. Antonio Puente, a clinical neuropsychologist, complaining of post-incident problems. In connection with the July 22, 2013 evaluation, Dr. Puente opined that Bland suffered a traumatic brain injury and post-traumatic stress disorder in the May 3, 2013 incident which required treatment.

- Dr. Puente again evaluated Bland on August 12, 2013 following testing on Bland performed on August 7, 2013; in conjunction with same, Dr. Puente added depression to his diagnoses from July 22, 2013, again related to the May 3, 2013 incident.

- Dr. Puente evaluated Bland on February 3, 2014, at which time he opined that Bland was still suffering from a traumatic brain injury and post-traumatic stress disorder.

- Following testing performed on March 10, 2014 and March 17, 2014, Dr. Puente evaluated Bland on April 14, 2014; in conjunction with same, Dr. Puente again found Bland to be suffering from depression and also determined that Bland was suffering from somatization, all of which he related to the May 3, 2013 incident and all of which would require treatment to improve his condition.

- On June 5, 2014 and July 23, 2014, Bland was again evaluated by Dr. Puente, who again confirmed that Bland was suffering from traumatic brain injury and post-traumatic stress disorder, again related to the May 3, 2013 incident and again which would require treatment.

In the instant motion, plaintiff does not seek an award that punitive damages are owed, specifically reserving such a determination. However, plaintiff does seek a *factual finding* that there are no genuine issues of material fact concerning Omega's arbitrary and capricious refusal to pay maintenance and cure benefits for injuries related to the May 3, 2013 accident - the *factual standard* necessary for the deferred *legal* determination.

## II. Summary Judgment Standard

Summary judgment is appropriate where the facts and law as represented in the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. Proc. 56(c). A fact is material if it could affect the outcome of the case under the governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248.

The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 47 U.S. 317, 325 (1986). Only after a proper motion for summary judgment is made must the non-movant set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e).

As the Fifth Circuit has pointed out:

> This burden is not satisfied with 'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence. We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.* ...[S]ummary judgment is appropriate in *any* case "where critical evidence is so weak

or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*)(citations omitted)(emphasis in original).

In evaluating the evidence provided in support of, and in opposition to, a Motion for Summary Judgment, "[t]he court must view facts and inferences in the light most favorable to the party opposing the motion." *Hunt v. Rapides Healthcare Sys. LLC*, 277 F.3d 757, 762 (5th Cir. 2001). "A factual dispute precludes a grant of summary judgment if the evidence would permit a reasonable jury to return a verdict for the non-moving party." *Id.* In evaluating evidence to determine whether a factual dispute exists, "[c]redibility determinations are not part of the summary judgment analysis." *Id.* To the contrary, "[i]n reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the non-moving party, as well as that evidence supporting the moving party that is uncontradicted and unimpeached." *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001).

### III.  Maintenance and Cure

In the instant motion, plaintiff seeks summary judgment on the factual underpinning necessary for a finding of punitive damages for failure to pay maintenance and cure. Maintenance and cure is an old remedy under general maritime law that is implicit in the contractual relationship between the seaman and his employer and designed to assist in the recovery of a seaman upon injury or illness sustained while in the service of the ship. *Snyder v. L & M Botruc Rental, Inc.*, 924 F.Supp.2d 728, 733 (E.D. La. Feb. 15, 2013) (J. Brown), *citing Pelotto v. L & N Towing Co.*, 604 F.2d 396, 400 (5th Cir.1979). When there are doubts or ambiguities regarding a seaman's right to receive maintenance and cure payments, "they are to be resolved in favor of the seaman." *Snyder*,

924 F.Supp2d at 734, *citing Vaughan v. Atkinson*, 369 U.S. 527, 532, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962). However, upon receiving a demand for maintenance and cure, a shipowner is not required to begin payments immediately, but may undertake a reasonable investigation of the seaman's claim. *Morales v. Garijak, Inc.*, 829 F.2d 1355, 1358 (5th Cir.1987), *abrogated on other grounds by Guevara v. Maritime Overseas Corp.*, 59 F.3d 1496 (5th Cir.1995); *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 518–20 (5th Cir.1986). If the shipowner unreasonably rejects the claim after investigation, when in fact the seaman is due maintenance and cure, the owner becomes liable for maintenance and cure payments in addition to compensatory damages. *Morales*, 829 F.2d at 1358. If, by failing to pay, the shipowner has not only been unreasonable, but has, also, been "callous and recalcitrant, arbitrary and capricious, or willful, callous, and persistent," *Id.*, then the owner may also be liable for punitive damages and attorney's fees. *Id.*; *see also Atlantic Sounding Co. v. Townsend*, 557 U.S. 404, 422, 129 S.Ct. 2561, 174 L.Ed.2d 382 (2009). The failure to pay maintenance and cure due an injured seaman is reasonable if a diligent investigation indicates that the seaman's claim is not documented by the submission of medical reports or his claim is not legitimate. *McWilliams v. Texaco, Inc.*, 781 F.2d 514, 518-20 (5th Cir. 1986). The entitlement to maintenance and cure ends when the seaman reaches the date of maximum possible cure, which is the point at which further treatment will probably not improve his condition. *Morales*, 829 F.2d at 1359, *citing Springborn v. American Commercial Barge Lines, Inc.*, 767 F.2d 89, 95 (5th Cir. 1985). *See also Johnson v. Marlin Drilling Co.*, 893 F.2d 77, 79 (5th Cir. 1990).

The Fifth Circuit has held that "[a] determination to terminate a seaman's right to maintenance and cure must be unequivocal." *Johnson*, 893 F.2d at 79. When there are conflicting diagnoses and prognoses from various physicians, there is a question of fact to be determined by the

trier of fact as to a plaintiff's entitlement to maintenance and cure benefits and as to whether an employer's termination of maintenance and cure benefits was arbitrary or capricious. *Tullos v. Resource Drilling, Inc.*, 750 F.2d 380, 388 (5th Cir.1985). However, an award for future maintenance and cure can be justified when supported by a physician's testimony. *Lirette v. K & B Boat Rentals, Inc.*, 579 F.2d 968, 969 (5th Cir.1978) (*en banc*).

The crux of the plaintiff's argument is that Omega failed to adequately investigate the plaintiff's renewed claim for maintenance and cure and refused to pay maintenance and cure benefits without consulting a medical professional, as to those renewed clams, which plaintiff argues amounts to a willful and wanton refusal to pay benefits and warrants the imposition of punitive damages. Omega argues it paid all medical bills related to the plaintiff's medical treatment following his injury until the date he was determined to have reached maximum medical improvement – May 30, 2013 – by the treating physician, Dr. Noel. Omega further argues it was not obligated to continue paying or renew maintenance and cure benefits in light of the opinion of Dr. Puente, because Dr. Puente is a "retained litigation expert" who rendered a "litigation opinion" and at no point was a treating physician, and Omega was in possession of competing medical opinion as to plaintiff's renewed claim.

Omega, also, argues the opinion of Dr. Puente is highly contested and directly disputed by Baton Rouge neuropsychologist, Dr. Paul Dammers. Omega argues it properly and timely investigated the renewed medical claims arguing brain injury by having all of the plaintiff's pertinent medical records, depositions, and Dr. Puente's testing data[1] evaluated by Dr. Dammers, who, also,

---

[1] According to the undisputed facts, Dr. Puenta examined several times between July 2013 and July 2014. Dr. Puenta evaluated the plaintiff, sometimes after testing was performed, specifically on August 7, 2013, March 10, 2014, and March 17, 2014.

issued a report on October 12, 2015 which contradicted Dr. Puente's report finding no evidence to substantiate the plaintiff's claim of brain injury. Dr. Dammers further noted testing of the plaintiff revealed an IQ of 69 and academic ability suggesting a third grade level. Therefore, Dr. Dammers opined that "Mr. Bland would be EXPECTED to have a broad range of deficits on neuropsychological testing, as the tests standards are based on a normal population." Omega argues Dr. Dammers further opined that Dr. Puente ignored testing results which demonstrated exaggeration or malingering, to wit:

> In summary, it would appear from the records that Mr. Bland did suffer a left zygomatic/maxillary complex fracture. There is nothing in the medical records to substantiate that he suffered an injury that could cause even a mild brain injury (MTBI). Even if the records did substantiate a MTBI, the average time of recovery for such an injury would be 1-3 months, and certainly never would be associated with persistent disability. Likewise, there is nothing in the medical records to substantiate a trauma sufficient to cause PTSD, nor has Mr. Bland demonstrated behavior consistent with the same diagnosis. Indeed, the far more likely explanation for his persistent complaints in the setting of litigation, would appear to be exaggeration and/or malingering. Dr. Puente's own records repeatedly mention the disposition of the plaintiff's legal case, even so far as recommending "settle case."[2]

The Fifth Circuit has held where there are conflicting medical diagnoses, summary judgment is not appropriate. In *Tullos*, the court explained:

> As to the diagnoses and prognoses of the physicians, they are not so clear and consistent as to validate removing the issue of arbitrary and capricious denial of the maintenance and cure from the jury. The diagnoses varied from soft tissue injury or chronic back sprain to a "lumbar facet syndrome" requiring spinal fusion to "spondylitis" to no indication of any organic disorder by certain tests. "[T]he cut-off point for maintenance and cure is not that at which the seaman recovers sufficiently to return to his old job but rather the time of maximum possible cure." ***However, such a determination should be unequivocal to terminate the right to maintenance and cure. In the case sub judice, extensive controversy was present in the medical opinions.***
>
> [ . . . ]

---

[2] *See* Report of Dr. Paul Dammer, attached to Omega's opposition brief, Doc. 83.

> Although the facts of the case sub judice are not as compelling in showing arbitrary and willful conduct by the employer, they are sufficient for a jury question: Superior was requested by counsel to reinstate benefits and further diagnoses were obtained such that it was not medically certain that Tullos had reached maximum cure. There is some question of the promptness with which Tullos informed Superior of his subsequent medical diagnoses and expenses, but any delay was not sufficient to remove the question from the jury. It should be noted that in its most recent opinion on the subject, this Court expressed its belief "that the willful, wanton and callous conduct required to ground an award of punitive damages requires an element of bad faith." The jury needs to resolve whether Superior's reliance on a report requested from its own physician to terminate benefits in conjunction with a refusal to pay further medical bills submitted was done in bad faith. The issue of whether Tullos had reached maximum cure was presented to the jury which found that he had not. ***Sufficient evidence was presented to raise a jury question as to the arbitrariness or capriciousness of the denial of his benefits in view of the continuing conflicting diagnoses and prognoses. In essence, Superior chose one doctor from many and followed his recommendation. This may not be arbitrary and capricious, but it is sufficient evidence entitling Tullos to have the jury resolve his arbitrary and capricious claim.***

750 F.2d at 388-89 (internal citations omitted) (emphasis added). Considering the foregoing, the district court remanded the matter in part for submission to a jury on the issue of arbitrary and capricious denial of maintenance and cure. 750 F.2d at 389.

In the instant case, the plaintiff's treating physician, Dr. Noel, reported the plaintiff reached maximum medical improvement on May 30, 2013. Thereafter, Dr. Puente (retained by the plaintiff) opined the plaintiff had suffered a traumatic brain injury due to the subject accident. Dr. Dammers, however (retained by Omega), opined there is no evidence of brain injury relating to the subject accident and the plaintiff's cognitive defects are to be expected given his borderline IQ and history of cognitive deficits.

As the court stated in *Tullos*, "the cut-off point for maintenance and cure is not that at which the seaman recovers sufficiently to return to his old job but rather the time of maximum possible cure." 750 F.2d at 389. The Fifth Circuit has held "such a determination should be unequivocal to terminate the right to maintenance and cure." *Id.* Here, as in *Tullos*, "extensive controversy" is

-9-

present in the medical opinions regarding whether the plaintiff sustained a brain injury following the subject accident, and there are genuine issues of material fact regarding whether the plaintiff's cognitive deficits are due to a brain injury related to the May 3, 2013 accident, or pre-existing cognitive deficits related to the plaintiff's borderline IQ and thus, sufficient genuine issues of material fact to allow the jury to make a determination as to Omega's conduct. For these reasons, this Court concludes summary judgment is not appropriate on the issue of whether Omega arbitrarily and capriciously refused to provide maintenance and cure following the date Dr. Noel opined the plaintiff had reached maximum medical improvement, and the relief requested in the instant motion, therefore, cannot be granted.

### IV. Conclusion

Therefore, for the foregoing reasons,

IT IS ORDERED that the "Motion for Partial Summary Judgment on Omega's Arbitrary and Capricious Refusal to Pay Maintenance and Cure" [Doc. 88] filed by plaintiff Author Bland is DENIED.

THUS DONE AND SIGNED in Lafayette, Louisiana, this 21 day of January, 2016.

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE